# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

JAMES SWAIM,
ADC #131028                                                                   PLAINTIFF

V.                              5:16CV00131 BRW/JTR

ESTELLA BLAND, APN; and
ANNETTE ESAW, Administrative Assistant,
Correct Care Solutions                                                       DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received by the Clerk of this Court within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

James Swaim ("Swaim") is a prisoner in the Cummins Unit of the Arkansas Department of Correction ("ADC"). He has filed this *pro se* action alleging that Defendants APN Estella Bland ("Bland") and Administrative Assistant Annette Esaw ("Esaw") denied him constitutionally adequate medical care and committed the state tort of medical malpractice when they failed to properly treat diabetes related injuries to his right foot. *Doc. 2.*

Bland and Esaw have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Facts, and two Replies. *Docs. 22, 23, 24, 32, & 39.* Swaim has filed two Responses and a Statement of Facts. *Docs. 37, 40, & 41.*

Before addressing the merits of these Motions, the Court will summarize the relevant facts giving rise to Swaim's claims:[1]

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

1. Swaim is a fifty-one year old prisoner, who has been an insulin dependent diabetic since he was three years old. *Doc. 23, Ex. B at 18-19; Ex. E.*

2. In 2005, Swaim arrived at the Cummins Unit. Despite being prescribed a diabetic diet, Swaim "regularly" ate sugary and carbohydrate-filled foods he purchased from the commissary, which caused him to have "numerous" high blood sugar values.[2] Swaim also developed diabetic neuropathy, which reduced the vascularization, sensation, and healing capacities in his feet and lower legs. Nevertheless, Swaim jogged approximately four miles a day, six days a week. Jogging often made Swaim's ankles swell, but usually the swelling resolved by the next morning. *Doc. 23, Ex. B at 19-33, 40-55; Ex. C; Ex. E.*

3. On April 27, 2015, Swaim went to the prison infirmary for diabetes management. During the exam, Swaim told APN Bland he had tightness and severe pain in his right *ankle* while jogging. APN Bland noted that Swaim's right ankle was moderately swollen, his pedal pulse was intact, and he was able bear weight on his right foot. APN Bland: (a) wrapped Swaim's right ankle in an ace bandage; (b) gave him a pillow to elevate his ankle; (c) issued a seven-day script releasing him

---

[2] Specifically, Swaim had "numerous hemoglobin A1c values of greater than 10%." *Doc. 23, Ex. E at 2; see also Ex. B at 43 & 120.*

for work duty, yard call, and exercise; (d) prescribed pain mediation and diuretics; and (e) ordered an x-ray, which later revealed swelling but no fracture or other abnormality in his right ankle. *Doc. 23, Ex. A at 49-52; Ex. B at 62-70; Ex. E.*

4. On May 26, 2015, APN Bland saw Swaim in the infirmary in response to his complaints of pain and swelling in his right *ankle.* APN Bland noted that a recent x-ray of Swaim's ankle was normal and that the swelling could be caused by Swaim's failure to regularly take prescribed diuretics. She then: (a) gave Swaim a diuretic injection and pain medications; and (b) instructed him to stop jogging, wear his ace bandage only during the day, and regularly take his oral diuretics. *Doc. 23, Ex. A at 57-58; Ex. B 87-90; Ex. E.*

5. On May 29, 2015, a non-party APN ordered x-rays of Swaim's right *ankle and foot.* The ankle x-ray showed swelling, but no other abnormalities. However, the foot x-ray revealed a "recent fracture" of the "right navicular bone with modest displacement and small chips fracture from the cuboid bone." *Doc. 23, Ex. A at 59.*

6. On June 2, 2015, a non-party APN: (a) gave Swaim a script releasing him from work and yard call: (b) provided him with crutches; (c) instructed him not to jog or bear weight on his right foot; and (d) ordered a consultation with an

4

orthopedist at the University of Arkansas for Medical Sciences hospital ("UAMS"). *Doc. 23, Ex. A 60-65; Ex. B at 31-30, 69-70, & 125-128.*

7. On June 10, 2015, Swaim was examined by a UAMS orthopedist, who ordered additional x-rays of his right foot. Those x-rays revealed that Swaim had "multiple degenerative changes of the midfoot and navicular with partial collapse and disruption of the tarsometatarsal joints," which is more commonly referred to as "Charcot arthropathy." [3] The orthopedist: (a) noted that there was "no skin breakdown on either foot"; (b) put a fiberglass cast on Swaim's right foot and lower leg; and (c) instructed him not to bear weight on his foot. *Doc. 23, Ex. A at 66-72; Ex. E.*

8. On June 30, 2015, orthopedist removed Swaim's fiberglass cast and noted that the skin on his right foot was "intact" and in good condition. The orthopedist applied a new fiberglass cast and recommended a "follow-up in 2 weeks." *Doc. 23, Ex. A at 87 & 98-99; Ex. E.*

---

[3] A non-party physician explains, in his sworn Affidavit, that diabetics who have neuropathy in their lower legs and feet often develop Charcot arthropathy, which is the collapse and deformity of the bones in the midfoot. "The initial manifestations of Charcot [arthropathy] are frequently mild in nature, but can become more pronounced with unperceived repetitive trauma." *Doc. 23, Ex. E at 2.*

9. On July 7, 2015, a non-party APN examined Swain in the infirmary for management of his diabetes. Swaim ambulated in his cast without difficulty, and he did not report any problems with his right foot. The APN submitted a "routine" priority request for authorization to schedule a follow-up appointment with the orthopedist. *Doc. 23, Ex. A at 94-96; Ex. E.*

10. On July 8, 2015, the Associate Regional Medical Director approved that consultation request. *Doc. 23, Ex. D & E.*

11. On July 9, 2015, Esaw, *who is an ADC Administrative Assistant without any medical training*, received notice to schedule a follow-up appointment for Swaim with the UAMS orthopedist.[4] Esaw immediately called the orthopedist's office and left a message requesting a follow-up appointment. *Doc. 23, Ex. D.*

12. On July 14, 2015, the orthopedist's staff returned Esaw's call and scheduled a follow-up appointment for July 28, 2015. *Doc. 23, Ex. D.*

13. On July 28, 2015, the orthopedist removed Swaim's cast and discovered

---

[4] It unclear from the record how Esaw received notice or who sent it to her.

an ulcer with a severe bone infection on his fourth toe.[5]  The orthopedist determined that the fourth toe had to be amputated. *Doc. 23, Ex. A at 113-116.*

14.   On July 31, 2015, the orthopedist amputated Swain's fourth toe on his right foot.[6]  *Doc. 23, Ex. A at 113-116.*

## II.  Discussion

### A.   Analysis of Swaim's Inadequate Medical Care Claim

Bland and Esaw argue that they are entitled to summary judgment on the inadequate medical care claim Swaim has asserted against them.  The Court agrees.

To proceed to trial on his inadequate medical care claim, Swaim must have evidence demonstrating that:  (1) he had an objectively serious need for medical care for diabetes related injuries to his right foot; and (2) Bland and Esaw

---

[5]  In her July 28, 2015 Encounter Notes, the orthopedist recorded that Swaim "was supposed to follow up 2 weeks ago but missed his appt. Due to this he developed an ulcer on his right 4th toe which was found to have osteomyelitis." *Doc. 23, Ex. A at 113.*  However, on June 30, 2015, the orthopedist recommended that Swaim return for a follow-up "*in 2 weeks*," which would have been on or about July 14, 2015. *Doc. 23, Ex. A at 98.*  Thus, contrary to the orthopedists notes, Swaim's July 28, 2015 appointment was *one week late*, not two weeks late. There is no indication in the medical records that Swaim ever "missed" a scheduled appointment.

[6] On June 8, 2016, *which was more than a month* after he commenced this lawsuit on April 28, 2016, Swaim's right foot was amputated *at his request.*  Swaim does *not* allege that Bland or Esaw were involved in the medical care he received for his right foot after his toe was amputated on July 31, 2015, or that they are responsible for the eventual amputation of his right foot. *Doc. 23, Ex. A at 118-168; Ex. B at 22, 36-38, 91-92, 107-108& 108-187.*

7

subjectively knew of, but were deliberately indifferent to, that serious medical need. *See Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 .3d 445, 460 (8th Cir. 2010). Deliberate indifference, which goes well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

### 1. APN Bland

Swaim alleges that Bland was deliberately indifferent when, "sometime" during 2009 or 2010, she failed to renew his prescription for "athletic" or "orthopedic" tennis shoes. *Doc. 2; Doc. 23, Ex. B at 13*. However, Swaim has not provided *any medical evidence* demonstrating that Bland failed to renew his script in 2009 or 2010. Furthermore, the medical records establish that Swaim received: (1) new athletic shoes on January 16, 2009; February 12, 2010; April 26, 2011; and December 24, 2012; and (2) insoles on September 14, 2012 and October 16, 2013. *Doc. 23, Ex. A at 1-7*.

Additionally, a non-party physician concludes, in his sworn Affidavit, that Swaim "was provided with appropriate footwear" and that his right foot problems

were *not* caused by a lack of proper footwear. *Doc 23, Ex. E*. The non-party physician further explains that, in his professional medical opinion, Swaim developed Charcot arthropathy because he was a non-compliant diabetic with neuropathy who placed additional stress on his fragile feet by jogging and failing to abide by his non-weight bearing instructions. *Id.* Swaim has not produced any medical evidence to refute that expert opinion. *See Reid v. Griffin,* 808 F.3d 1191, 1193 (8th Cir. 2015) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"); *Beck v. Skon*, 253 F.3d 330, 333-34 (8th Cir. 2001) (finding no deliberate indifference where the prisoner failed to comply with the recommended course of medical care).

Swaim also alleges that, on April 27 and May 26, 2015, APN Bland was deliberately indifferent when she failed to determine that he had Charcot arthropathy. Swaim believes that APN Bland would have properly made that diagnosis if she had ordered an x-ray of his foot, instead of his ankle. Swaim's argument overlooks the fact that he told APN Bland that he was having pain in his *ankle*, not his foot. Furthermore, it is well settled that the "question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic

example of a matter for medical judgment," and not the basis for finding deliberate indifference." *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *see also Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008) (explaining that prison medical providers "remain free to exercise their independent medical judgment" without running afoul of the Eight Amendment).

Here, it is undisputed that, in response to Swaim's complaints of pain, APN Bland: (1) ordered x-rays, which showed swelling but no fracture; (2) wrapped his ankle with an ace bandage; (3) prescribed medications to reduce the pain and swelling; (4) gave him a pillow to elevate his right leg and foot; and (5) released him from work duty and yard call. The non-party physician concludes, in this sworn Affidavit, that this was a medically appropriate course of care. *Doc. 23, Ex. E; see also Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir. 2014) (finding that no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner").

Finally and perhaps most importantly, there is no evidence that Swaim was harmed by the two month delay in being diagnosed with Charcot arthropathy. *See Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (explaining that, "to avoid summary judgment," a prisoner must "place verifying medical evidence in the record to establish the detrimental effect"); *Gibson v. Weber*, 433 F.3d 642, 646-47

(8th Cir. 2006) (same).

Nothing in the record suggests that APN Bland was deliberately indifferent to Swaim's objectively serious medical needs. Accordingly, she is entitled to summary judgment and his inadequate medical care claim against her should be dismissed, with prejudice. *See Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007) (explaining that, to defeat summary judgment, a prisoner "must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded" his need for medical care).

## 2. Administrative Assistant Esaw

Swaim alleges that Administrative Assistant Esaw was deliberately indifferent when she failed to schedule a follow-up appointment with the orthopedist two weeks after this June 30, 2015 appointment. Swaim believes that, if Esaw had done so, he would not have developed an ulcer and bone infection under his cast and his fourth toe could have been saved from amputation.

As previously mentioned, it is undisputed that: (1) Esaw called the orthopedist's office on Thursday, July 9, 2015, which was the *same day* that she received instructions to schedule a *"routine"* follow-up exam; (2) the *orthopedist's staff* returned Esaw's call three business days later, on Tuesday, July 15, 2015; and

(3) the *orthopedist's staff* scheduled the follow up exam for July 28, 2015. Nothing in the record suggests that Esaw, *who has no medical training,* was deliberately indifferent when she relied on the ADC medical personnel's classification of the follow up exam as "routine" or the orthopedic staff's determination that July 28, 2015 was an appropriate date for the follow-up examination. This is especially true in light of the fact that Esaw did *not* complain of right foot pain or an infection when he went to the prison infirmary three times between his June 30 and July 28, 2015 appointments with the orthopedist.[7]

Finally, the non-party physician declares, in his sworn Affidavit, that "Esaw acted appropriately and timely scheduled the follow up orthopedic appointment." *Doc. 23, Ex. E at 6.* Swaim has presented *no evidence* to refute that conclusion. *See Reid,* 808 F.3d at 1193.

Nothing in the record suggests that Esaw was deliberately indifferent to Swaim's objectively serious medical needs. Accordingly, she is entitled to summary judgment and Swaim's inadequate medical care claim against her should be dismissed, with prejudice.

---

[7] Swaim went to the infirmary for diabetes management and nausea on July 7, 11, and 18, 2015. *Doc. 23 Ex. A, 91- 112*

**B.     Analysis of Swaim's Medical Malpractice Claim**

APN Bland and Esaw also argue that they are entitled to summary judgment on the pendent medical malpractice claim Swaim has asserted against them under Arkansas law. *See* 28 U.S.C. § 1367(a) (providing that federal courts, that have original jurisdiction over a federal claim, may also exercise supplemental jurisdiction over state law claims that are "part of the same case or controversy").

Arkansas law requires a plaintiff raising a malpractice claim to have "expert testimony" establishing the applicable standard of care, a breach of that standard of care, and proximate causation. *See* Ark. Code Ann. § 16-114-206(a); *Williams v. Elrod,* 72 S.W.3d 489, 492 (Ark. 2002). The only exception to the expert testimony requirement is when the standard of care and proximate cause are "within the jury's comprehension as a matter of common knowledge." *Id.*, *see also Mitchell v. Lincoln,* 237 S.W.3d 455, 460 (Ark. 2006) (explaining that in the "vast majority" of cases, the common knowledge exception does *not* apply); *Haas v. Starnes*, 915 S.W.2d 675, 678 (Ark. 1996) (explaining that the common knowledge exception applies to obvious cases of negligence such as "a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it").

Here, Swaim does *not* have any expert testimony to support his medical

malpractice claims against APN Bland and Esaw. Given Swaim's complicated medical condition, a jury of laymen clearly would not be able to determine, in the absence of expert testimony, whether APN Bland or Esaw breached the applicable standard of care and whether any such breach was the proximate cause of the diabetes related injuries to Swaim's right foot.

Accordingly, Esaw and Bland are entitled to summary judgment, and Swaim's medical malpractice claim should be dismissed, with prejudice. *See Rueben v. Outlaw,* Case No 14-3819, 2015 WL 5449531 (8th Cir. Sept. 17, 2015) (unpublished opinion) (affirming summary judgment when a prisoner failed to produce expert testimony to support his medical malpractice claim, as required by Ark. Code. Ann. § 16–114–206(a)).

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment *(Doc. 22)* be GRANTED, and that Swaim's inadequate medical care and medical malpractice claims against APN Bland and Esaw be DISMISSED, WITH PREJUDICE.

Dated this 8th day of August, 2017.

_____
UNITED STATES MAGISTRATE JUDGE